616 So.2d 1243 (1993)
RADIOFONE, INC.
v.
The CITY OF NEW ORLEANS, et al.
No. 92-CA-1523.
Supreme Court of Louisiana.
April 12, 1993.
Concurring Opinion April 30, 1993.
*1244 William D. Aaron, Jr., City Atty., Dan B. Zimmerman, Deputy City Atty., Kathy Torregano, Chief Deputy City Atty., Joel Loeffelholz, Brett J. Predergast, Ass't City Attys., C.J. Blache, and Leo Hamilton, Baton Rouge, for applicant.
Donald Theriot, Ashton R. Hardy, and Regina S. Wedig, Walker, Bordelon, Hamilin, Theriot & Hardy, New Orleans, for respondent.
Concurring Opinion by Chief Justice Calogero April 30, 1993.
DENNIS, Justice.[*]
Plaintiff, Radiofone, Inc. (Radiofone), sues for a judgment declaring unconstitutional one section of a New Orleans municipal ordinance imposing a 1% charge on subscribers of intrastate telecommunications services, including local telephone service, private communication service, toll telephone service, teletypewriter or computer exchange service, cellular mobile telephone or telecommunications service, specialized mobile radio or paging service, and any other form of mobile or portable one-way or two-way communications (hereafter referred to as the Municipal Telecommunications Subscriber Charge or Section 52-202). Radiofone claims that Section 52-202 is a nullity because the circumstances of its enactment violated (1) the constitutional requirement that a municipal ordinance *1245 levying a new tax be approved by a majority vote of the electors, La. Const. 1974 Art. VI, § 29(A), and (2) the statutory prohibition against a local governmental entity's levying sales and use taxes on telecommunications services not in effect on July 1, 1990. LSA-R.S. 47:301(14)(i)(v)(aa). Defendants are the City of New Orleans, Mayor Sidney Barthelemy, and members of the New Orleans City Council (collectively referred to as the City).
The district court agreed with the plaintiff's argument and held that the Municipal Telecommunications Subscriber Charge was unconstitutionally adopted because it was not approved by a majority of the electors at a public election held for that purpose as required by Article VI, § 29(A) of the 1974 state constitution. The district court found it unnecessary to reach the statutory question after resolving the constitutional question. The defendants appealed directly to this court as is their right in a case in which a law has been declared unconstitutional. La. Const. 1974, Art. V, § 5(D)(1).
The parties have agreed for purposes of this appeal that the Municipal Telecommunications Subscriber Charge embodied in Section 52-202 is a sales tax. The City, however, contends that the charge is not a new tax but is a continuation of a 1968 tax levied on consumers or subscribers for telephone rentals, teletypewriter local service and private line service provided by South Central Bell Telephone Company, by name, and located within the City of New Orleans. The City argues that because the 1974 Constitution and LSA-R.S. 47:301(14)(i)(v)(aa) became effective after the enactment of the 1968 tax, Section 52-202 falls beyond the proscriptions of the 1974 Constitution and the 1990 legislation. We disagree with the City's initial premise, concluding that Section 52-202 imposes a new tax on previously untaxed telecommunications services and providers. The 1990 Ordinance, therefore, fell subject to the constitutional and statutory requirements in existence at the time of its enactment. Because the City failed to submit the proposed tax to the public for its approval at an election held for that purpose as required by Article VI, § 29(A), the tax is unconstitutional and invalid. Accordingly, the ruling of the district court is affirmed.

FACTS AND PROCEDURAL HISTORY
On November 27, 1968, the City of New Orleans adopted Ordinance 3973, M.C.S., to create a municipal subscriber charge on consumers of intrastate telephone services provided by South Central Bell Telephone Company. By its express terms, the ordinance affected only telecommunications services provided by South Central Bell; that is, the ordinance burdened South Central Bell alone by explicit reference. The ordinance provided a 1% municipal subscriber charge on subscribers of rental telephones, teletypewriter local service and private line services located within the City of New Orleans. The 1% charge was to be added to the bill sent to each subscriber by South Central Bell. In its capacity as agent for the City of New Orleans, South Central Bell was to collect and remit the municipal subscriber charge to the City in quarterly installments. The ordinance was to take effect on January 1, 1969 and would have expired on July 1, 1970, but was continued to December 31, 1970 by Ordinance 4317, M.C.S. and was ultimately continued indefinitely by Ordinance 4428, M.C.S.
On November 29, 1990, the City of New Orleans adopted the tax ordinance in question, Ordinance 14211, M.C.S. (the Ordinance) without submitting the proposition to a vote of the electors of the City. Designated as Chapter 52 of the City Code and purporting to amend and re-enact the 1968 tax, the Ordinance vastly expanded the scope of taxable telecommunications services and telecommunications service providers subject to the City's taxing authority.
Section 52-200 defines "telecommunications services" as including local telephone service, private communication service and toll telephone service, as well as teletypewriter or computer exchange service, cellular mobile telephone or telecommunications service, specialized mobile radio or paging service, and any other form of mobile or *1246 portable one-way or two-way communication. Section 52-202 levies a Municipal Telecommunications Subscriber Charge to be paid by consumers of enumerated telecommunications services and rental of equipment. The tax is measured at one percent of the price paid by consumers of telecommunications services designated in Section 52-200. Like the original 1968 charge, the 1990 Municipal Telecommunications Subscriber Charge is included in the bill sent to each subscriber by the telecommunications service provider. The Ordinance charges the provider, as the agent for the City of New Orleans, with collecting and remitting the tax to the City in quarterly installments.
The Ordinance became effective on December 7, 1990. The City began to levy the Municipal Telecommunications Subscriber Charge on January 1, 1991. The City later repealed sunset clauses originally contained in the ordinance. Ordinance 14884, M.C.S. As a result, the tax continued to be levied rather than expiring at the end of 1991.
Radiofone, Inc. (Radiofone) is a Louisiana corporation licensed by the State of Louisiana to provide intrastate cellular mobile telephone and paging services and has provided telecommunications services in Louisiana since the 1950's. In its suit for declaratory judgment, Radiofone attacked the constitutionality of Section 52-202 of the Ordinance and another section not at issue in this direct appeal. Radiofone averred that the Municipal Telecommunications Subscriber Charge is in reality a prohibited sales tax in violation of the 1974 Constitution because the proposed tax was not submitted for public approval at an election held for that purpose. Radiofone further contended that the Municipal Telecommunications Subscriber Charge violated LSA-R.S. 47:301(14)(i)(v)(aa) because the City levied a tax on telecommunications services not in effect on July 1, 1990. The City filed a peremptory exception of no right of action and a peremptory exception of no cause of action, which were later withdrawn. Both parties filed motions for summary judgment. After a hearing, the district court decreed that the Municipal Telecommunications Subscriber Charge was a sales tax which had been adopted without being approved at a public election held for that purpose, as required by Article VI, § 29(A) of the state constitution, and was, therefore, unconstitutional.[1]
On direct appeal to this court pursuant to La. Const. Article V, § 5(D)(1), the City urges that the district court erred in concluding that the Municipal Telecommunications Subscriber Charge is an unconstitutional sales tax. The City points out that it has the authority under its Home Rule Charter to enact all taxes not expressly prohibited by or inconsistent with the state constitution. The City maintains that Section 52-202 of the 1990 Ordinance is not inconsistent with the constitution because it does not impose a new tax on the sale or use of telecommunications services, but continues, as amended, the 1968 tax on telecommunications services. Accordingly, the City contends the original telecommunications tax was ratified and placed beyond the constraints of Article VI, § 29(A) of the 1974 Constitution by virtue of Article VI, § 31. For the same reason, the City also contends that LSA-R.S. 47:301(14)(i)(v)(aa) has not been violated.

LAW AND ANALYSIS
This court has repeatedly noted that the City's broad taxing authority under the Home Rule Charter of 1954 and its predecessor, Act 159 of 1912, as amended, allows the City to levy taxes which are "not prohibited by or inconsistent with the constitution." Reed v. City of New Orleans, 593 *1247 So.2d 368 (La.1992); Hildebrand v. City of New Orleans, 549 So.2d 1218 (La.1989), cert. denied, 494 U.S. 1028, 110 S.Ct. 1476, 108 L.Ed.2d 613 (1990); City of New Orleans v. Scramuzza, 507 So.2d 215 (La.1987); ACORN v. City of New Orleans, 377 So.2d 1206 (La.1979) (ACORN I); City of Lake Charles v. Henning, 414 So.2d 331 (La.1982); Mouledoux v. Maestri, 197 La. 525, 2 So.2d 11 (La.1941). One of the constitutional restrictions on a municipality's exercise of taxing powers is the requirement that a proposed sales and use tax be approved by a majority of the electors at a public election held for that purpose. La. Const. 1974 Art. VI, § 29(A).
The City properly concedes that the Municipal Telecommunications Subscriber Charge is a sales tax. Reed v. City of New Orleans, 593 So.2d 368 (La.1992). First, the charge is due and payable at the time of the sale or purchase of the telecommunications services; the charge is added to and constitutes a part of a bill sent to the subscriber by the telecommunications service provider. Second, the charge is assessed against the ultimate consumer of the telecommunications services, the subscriber. Ordinance 14211, Section 52-202. Third, the telecommunications service provider, the functional equivalent of the retail dealer, is obliged to collect and remit the municipal charge to the City as the City's agent. Compare LSA-R.S. 47:301(10)(a)(ii) (defining retail sale for purposes of imposition of a sales and use tax by a political subdivision) with Section 52-204B of Ordinance 14211 (recognizing telecommunications service providers as the City's agent for purposes of collecting and remitting the municipal subscriber charge). Fourth, the charge is calculated as a percentage of the amounts paid or charged for defined telecommunications services. See LSA-R.S. 47:301(14)(i)(ii) (defining telecommunications services in relation to the sale of such services). See also Section 52-200(4)(A) of the Ordinance (defining telecommunications services) and Section 52-202 (imposing a 1% municipal subscriber charge on all subscribers of covered telecommunications services). Finally, the definition of "telecommunications services" closely tracks the form and substance of the state general sales and use tax. See LSA-R.S. 47:301 et seq.
It is undisputed that the sales tax ordinance at issue in the present case was not approved by a majority of electors at a public election. Therefore, the tax is unconstitutional if the only basis for its validity is Article VI, § 29(A) because that authorization for a local governmental subdivision to impose a sales tax is clearly conditioned upon approval by a majority of the electorate. See generally, Reed v. City of New Orleans, 593 So.2d 368 (La.1992). See also Cox Cable New Orleans, Inc. v. The City of New Orleans, 601 So.2d 392 (La.App. 4th Cir.1992), writ granted 602 So.2d 12 (La.1992). Consequently, the City seeks to sustain the telecommunications tax under Article VI, § 31 of the state constitution which provides that "Any tax validly being levied by a political subdivision under prior legislative or constitutional authority on the effective date of this constitution is ratified." The City argues that the sales tax imposed by Section 52-202 of the 1990 Ordinance is merely a re-enactment and continuation of the 1968 telecommunications tax ordinance which was tacitly ratified by the 1974 Louisiana Constitution. Id. The argument is contingent upon the City's claim that the Municipal Telecommunications Subscriber Charge does not levy a new tax or increase an existing tax, but is simply the exercise of the City's taxing powers existing under the 1968 municipal subscriber charge, modified only to reflect advances in telecommunications technology. We disagree and conclude that because the Section 52-202 of the 1990 Ordinance imposes taxes neither authorized nor contemplated by the 1968 ordinance, it imposes a new tax and, therefore, is subject to the constitutional and statutory constraints in effect at the time of its adoption in 1990. Cf. Audubon Ins. Co. v. Bernard, 434 So.2d 1072 (La.1983).
First, the 1990 Ordinance vastly expands the scope of taxable telecommunications services as well as the class of telecommunications services providers who are bound *1248 to collect and remit the tax or become personally liable for the same. By its narrowly-drawn terms, the 1968 ordinance restricted the exercise of the City's taxing power so as to affect only a limited array of telecommunications services provided by a single corporation, South Central Bell Telephone Company, designated by name. The 1968 ordinance levied a tax only on that company and its subscribers for telephone rentals, teletypewriter local service, and local private line service. In contrast, the 1990 Municipal Telecommunications Subscriber Charge imposes a tax on many different and additional identifiable services and providers. The 1990 Ordinance taxes a widely expanded category of telecommunications services, including those taxed under the 1968 ordinance, and others such as cellular telephone services which were not in operation in Louisiana before the 1980's. The 1968 ordinance clearly was not adopted with the intention to tax the markedly different telecommunications services, like cellular mobile telephone services, which have developed subsequent to its enactment.
Second, the City asserts that the 1990 Ordinance was intended not as a substantive expansion of the earlier municipal subscriber charge but, in effect, merely as a clarification that the tax covers recent improvements in technology and continues to affect telecommunications services providers despite the 1982 federally mandated break-up of AT & T. However, it is self-evident that the 1990 Ordinance affects telecommunications services different in character from those available within the tax jurisdiction before 1968, and the City has not shown otherwise. The narrow focus of the 1968 ordinance is underscored by the fact that from 1969 until 1990, the City did not attempt to collect the tax from nonutility telecommunications services providers or from regulated utilities other than South Central Bell. For instance, although Radiofone began providing paging services in the New Orleans area during the 1950's, it was not considered a taxable telecommunications services provider by the City before 1990. Nor were its paging services taxable under the 1968 ordinance. Moreover, the expansive definition of "telecommunications service provider" contained in the 1990 Ordinance as including "any person who furnishes telecommunications services for compensation" sharply contrasts with the earlier ordinance which obligated only South Central Bell, by name, to collect and remit the tax. The 1990 Ordinance conceivably seeks to reach even non-traditional telecommunications service providers, such as hotels, that provide guests or customers special telecommunications services for compensation.
Third, the language of the preamble of the Ordinance indicates that the City's argument is erroneous. The preamble notes that the Ordinance imposes taxes on previously untaxed nonutility providers: "WHEREAS, the enactment of Act No. 388 of the 1990 Regular Session of the Louisiana Legislature has extended the breadth of taxable telecommunications service providers permitting the city to realize revenue from previously untaxed nonutility telecommunications service providers ..." Ordinance 14211 (Preamble). The fact that nonutility telecommunications services providers were required to neither collect nor pay the 1% municipal subscriber charge before the enactment of the 1990 Ordinance indicates that Section 52-202 embodies a new charge upon subscribers of new categories of telecommunications services furnished by a broadened class of providers rather merely continuing the pre-existing 1968 tax.
In sum, we conclude that because the 1990 Ordinance taxes telecommunications services and entities distinguishable from those taxed under the pre-existing 1968 ordinance, this new tax, in order to be valid, must meet the constitutional and statutory requirements in effect at the time of its enactment, including the requirement that a proposed sales tax be submitted to the public for approval by majority vote. La. Const. Art. VI, § 29(A).
In the alternative, the City has argued that in the event this court concludes that Section 52-202 of Ordinance 14211 is unconstitutional, the court should sever the *1249 unconstitutional aspects of that section from the pre-existing 1968 ordinance and allow the balance to stand. In effect, the City would have this court carve out or reshape Section 52-202 to mirror the 1968 municipal subscriber charge and uphold what remains as a constitutional exercise of the City's taxing authority.
The test for severability is whether the unconstitutional portions of the ordinance are "so interrelated and connected with the constitutional parts that they cannot be separated without destroying the intention manifested" by the enacting body. State v. Azar, 539 So.2d 1222, reh'g denied 539 So.2d 1226 (La.1989). If the remaining portion is separable from the offending portion, this court may strike only the offending portion and leave the remainder intact. Id. To be capable of preservation, the remaining parts of an ordinance must contain an intelligible and valid ordinance capable of being placed in execution and conforming to the general purpose and intent of the enacting body. See 2 Norman Singer, Sutherland Statutory Construction § 44.01 (4th ed. 1986) (citing authorities).
In the present case, severability is not possible despite the severability clause contained in Section 52-208. Severing the unconstitutional aspects of the Section 52-202 of the 1990 Ordinance and preserving the remainder would require this court to rewrite entirely not only Section 52-202 but also other sections of the Ordinance to single out South Central Bell as the only telecommunications service provider subject to the Ordinance. Redefining "telecommunications services" subject to the tax would also be required. Because this would produce a result counter to the intent of the City to tax equally and without discrimination the broadest possible array of telecommunications services and providers, Section 52-202 of the Ordinance must fail in its entirety.

CONCLUSION
The New Orleans Municipal Telecommunications Subscriber Charge (Section 52-202 of No. 14211, M.S.C.) constitutes an attempt to levy and collect a tax upon the sale at retail, the use, or the consumption of telecommunications services, or the sales of such services as defined by law, without approval by a majority of the electors voting thereon in an election held for that purpose, as required by Article VI, Section 29(A) of the 1974 Louisiana Constitution, and is therefore not constitutionally authorized.
The judgment of the district court declaring the New Orleans Municipal Telecommunications Subscriber Charge (Section 50-202 of No. 14211, M.S.C.) unconstitutional is affirmed.
AFFIRMED.
CALOGERO, C.J., concurs and assigns reasons.
MARCUS, J., concurs in part, dissents in part and assigns reasons.
MARCUS, Justice (concurring in part and dissenting in part).
I agree with the majority's conclusion that Section 52-202 is unconstitutional; however, in light of the City Council's express intent to amend and reenact Ordinance No. 3973 M.C.S. as stated in Ordinance No. 14211 M.C.S. and the continued effect of Ordinance No. 3973 M.C.S., I believe that the majority could have retained the one percent charge on South Central Bell Telephone Company originally imposed under Ordinance No. 3973 M.C.S.
CALOGERO, Chief Justice, concurs.
I agree with the majority that Section 52-202 is unconstitutional. Nonetheless, I concur in order to express my view that Ordinance No. 3973 M.C.S., enacted November 27, 1968, may have survived the Council's attempt in 1990, although unsuccessful as it now turns out, to amend and reenact, within Ordinance No. 14211 M.C.S., Section 52-202.
NOTES
[*] Cole, J., assigned to participate in decision of case argued prior to his retirement.
[1] Radiofone also argued that the Gross Receipts Tax levied in Section 52-201 of the Ordinance, in substance and reality, is an unconstitutional occupational license tax. That section imposes a 4% tax on the gross receipts on providers of telecommunications services within Orleans Parish for the privilege of engaging in the business of furnishing telecommunications services. The tax burdens the gross receipts from calls originating from or terminating in Orleans Parish and, like Section 52-202, is payable quarterly. The district court upheld the constitutionality of the Gross Receipts Tax. The plaintiffs appealed from that ruling to the Fourth Circuit Court of Appeal.